UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Carol Stith, individually and on behalf of all others similarly situated,** : | | |
| Plaintiffs, : | | Civil Action No. |
| : | | (Jury Trial Demanded) |
| v. : | | |
| : | | |
| **Merck & Co., Inc.,** : | | CLASS ACTION |
| Defendant. : | | |

## COMPLAINT

The Named Plaintiff, by her undersigned counsel, brings this action seeking relief from the employment discrimination of defendant Merck & Co., Inc. ("Merck"), and make the following allegations:

### JURISDICTION AND VENUE

1.  This Court has original jurisdiction to hear this Complaint and adjudicate the claims stated herein under 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. § 2000d-2, 2000e-5(f), this action being brought under the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d and 2000e et seq., and the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (Nov. 21, 1991), to redress and enjoin the discriminatory employment practices of Merck.

2.  The Named Plaintiff has filed timely Title VII administrative charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Ms. Stith received her Notice of Right to Sue from the EEOC on June 29, 2001 relating to her original Charge of Discrimination which was filed on March 15, 2001. On April 9, 2002, Ms. Stith filed a second such Charge arising from her retaliatory discharge by Merck effective February 14, 2002.

3.  The application limitations period for the filing of this Complaint was tolled by the pending of the putative class action, Webb v. Merck, in which the putative class included the

Named Plaintiff. On April 1, 2002, this court denied the <u>Webb</u> motion for class certification, and thus triggered the 90-day period for the timely filing of the instant action.

4. Venue is proper in this District by reason of 28 U.S.C. §1391(b) because Merck resides here and a substantial number of the actions and omissions that give rise to this case occurred here. In addition, several other employment discrimination actions against Merck already are pending in this Court.

## PARTIES

5. Carol Stith, an African-American woman, was hired to work as a secretary at Merck's Rahway, New Jersey facility beginning on March 27, 1989. Ms. Stith's initial position was Secretary I, and she initially earned approximately $22,750 per year. Thirteen years later, while working as a senior procurement associate and earning $41,544 per year, Ms. Stith was suddenly terminated without warning or justification.

6. Defendant Merck & Co., Inc. is a corporation doing business within the United States with a principal place of business located at West Point, Pennsylvania. At all times relevant hereto Merck has had more than 500 employees.

## CLASSWIDE ALLEGATIONS OF DISCRIMINATION

7. This action is being filed as a class action on behalf of present and former African American employees who work(ed) at Merck's facility in Rahway, NJ.

8. The Named Plaintiff and the other members of the proposed class (collectively hereafter, "plaintiffs") have been subjected to a continuous and pervasive pattern and practice of racial discrimination by Merck in decisions that directly affect compensation, including those pertaining to initial job assignments, training, promotions, base salary or hourly rates, overtime opportunities, bonuses, stock options, and retirement benefits.

9. Merck has a classwide policy of promulgating highly discretionary employment rules and then failing to monitor the subjective employment decisions that flow directly therefrom.

Merck does so with the intention and effect of fostering, perpetuating and/or permitting racial discrimination in the workplace. The result has been a significantly segregated work force and an underutilization of African-American workers.

10. Merck's highly discretionary compensation policies and practices include its lack of a fair and objective job posting policy, and the highly subjective "standards" which it uses in its performance reviews and promotions, including its corporate succession planning process. 11.

The degree to which Merck fails to monitor the discriminatory impact of its discretionary policies has been illustrated in the testimony of Merck witnesses in depositions taken in the Webb litigation (E.D. Pa. C.A. 99-cv-413). For example, Robert Boisclair, an MMD executive, admitted that the only thing that he does to ensure that bonuses and stock options are paid on a non-discriminatory basis is to have discussions with his staff. Niki Archambeau, the Senior Director of Human Resources and Diversity with EEO responsibility for all Merck divisions, admitted that she does not monitor promotion or compensation decisions except by looking at periodic statistics.

12. Merck has promulgated equal employment opportunity and anti-discrimination polices and procedures that are supposed to apply to all employees and all divisions. However, Merck has granted its managers such broad and unfettered discretion so as to permit all of its policies and procedures, including its EEO policies and procedures, to be applied in a discriminatory manner. Defendant's failure to effectively monitor its own employment policies, practices and procedures fosters and promotes racially discriminatory compensation decisions.

13. Merck has also followed a general practice of retaliating against employees who complain of racial discrimination or support the discrimination claims of others. Ms. Stith has suffered such retaliation.

14. Merck has a continuing history of discriminating against and harassing Black employees. Despite the efforts of Black employees, and token efforts on the part of Merck, this

racial discrimination and harassment has continued to the present.

15. On June 6, 1979, the Office of Federal Contract Compliance Programs ("OFCCP") entered into a Conciliation Agreement with Merck relating to the West Point and Rahway facilities. The Conciliation Agreement was the culmination of a complaint filed by certain Black employees at the West Point and Rahway facilities and an investigation of employment practices at both sites conducted by the Veterans Administration from August 1976 until July 1977. The Veterans Administration was the federal agency at that time that had jurisdiction over employment discrimination cases in the drug industry.

16. The employees' complaint alleged race discrimination in employment, promotions, demotion, transfer, compensation and training. The Veterans Administration investigation of the complaint found as to both the West Point facility and the Rahway facility:

    a. that Merck discriminated in the selection and hiring of Blacks.

    b. that Merck discriminated against Blacks by placing them into the lowest paying jobs at the time, which "created a caste system for Blacks which continues to influence the attitude of management and the workforce toward Black employees as inferior, lacking skills and unworthy of equal treatment in the [Merck] 'family'".

    c. that Merck has discriminated against Blacks in promotions; and

    d. that Merck's grievance procedures had not effectively resolved the complaints of Black employees.

17. The Conciliation Agreement was to be effective on July 1, 1979 and to expire on June 30, 1982, unless otherwise noted therein. Consistent with its prior pattern and practice of discriminating against Black employees and in flagrant and reckless disregard of their federally protected rights and rights established by the Conciliation Agreement, Merck failed to comply with material components of the Conciliation Agreement.

18. Merck's current culture of covert, as well as overt, racial discrimination was

illustrated in a survey which Merck took of its employees in 2000. With regard to diversity, Merck asked its employees whether they are "treated with respect" regardless of their job. While specific results have not been publicly released, it appears that more than 42% of Merck's African-American employees believe that they are not treated with respect.

19. On information and belief, Merck receives funding from the federal government, a primary purpose of which is to continue employment in the prescription drug industry.

20. Merck's performance rating process is subjective and implemented in a racially discriminatory fashion.

21. Merck's corporate succession planning process is subjective and implemented in a racially discriminatory fashion.

22. The acts alleged above have continued for several years and constitute a continuing violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

23. Defendant has acted and failed to act with reckless disregard for plaintiffs' rights.

### EXPERIENCE OF THE NAMED PLAINTIFF

24. Carol Stith has experienced racial discrimination at Merck. Her work history and discriminatory experiences are generally described below.

25. From 1989 through 1991, Ms. Stith worked as a Secretary I for one manager and one engineer in the Toll Manufacturing/Materials Management area of Merck.

26. In May 1991, she was promoted to the position of Engineering Specialist. This was the only genuine promotion that Ms. Stith received while at Merck and the person primarily responsible for giving her this opportunity was a black man.

27. In September 1992, Ms. Stith was returned to a secretarial position, this time in the New Products Planning area.

28. From March 1995 until she was terminated, Ms. Stith served as a secretary and procurement specialist, formally an Administrative Associate II, reporting to the Procurement

Manager. Ms. Stith received less compensation, including bonuses and stock options, than her white counterparts. Following a dispute about her having requested to take Martin Luther King Day off, her work was unfairly criticized. In June 1999, Ms. Stith was relocated, while still working in the Procurement Department, to Rahway. When filled previously by a white employee, the Rahway position to which she was assigned was graded a level higher than when it was performed by Ms. Stith and another African American woman. In addition, Ms. Stith was informed by her supervisor that she (Ms. Stith) would not be entitled to receive stock options because she had received a Meets Expectations (ME) rating.

29. Throughout her thirteen years at Merck, Ms. Stith applied unsuccessfully for more than ninety positions -- some promotions and some positions that would have provided for lateral movement but an increased level of exposure to different job functions. She was denied all of these applications for new positions despite being qualified for the same. Among the positions which Ms. Stith attempted unsuccessfully to obtain are the following:

    a.    In January 1998, Ms. Stith applied for the position of Administrative Associate III, a grade 12 position.

    b.    In February 1998, Ms. Stith applied for the position of Administrative Associate III, a grade 11 position.

    c.    In June 1998, Ms. Stith applied for the position of Administrative Associate III, a grade 11 position.

    d.    In August 1998, Ms. Stith applied for the position of Administrative Associate in Department 788.

    e.    In November 1998, Ms. Stith applied for the position of Administrative Associate III, a grade 11 position.

    f.    In January 1999, Ms. Stith applied for the position of Administrative Associate II, a grade 12 position.

  g. In February 1999, Ms. Stith applied for the position of Administrative Associate III, a grade 11 position.

  h. In February 1999, Ms. Stith applied for the position of Administrative Associate II, a grade 12 position.

  i. In February 1999, Ms. Stith applied for the position of Administrative Associate III - WWRA Cord & Clin Supp., a grade 11 position.

  j. In March 1999, Ms. Stith applied for the position of Administrative Associate III, a grade 11 position.

  k. In May 1999, Ms. Stith applied for the position of Administrative Associate III, a grade 11 position.

  l. In September 1999, Ms. Stith applied for the position of Administrative Associate III, a grade 11 position.

  m. In November 1999, Ms. Stith applied for the position of Administrative Associate III with the MRL Department, a grade 11 position.

  n. In March 2000, Ms. Stith applied for the position of Administrative Associate, a grade 12 position.

  o. In July 2000, Ms. Stith applied for the position of Administrative Associate II, a grade 12 position.

  p. In August 2000, Ms. Stith applied for the position of Administrative Associate III, a grade 11 position.  She was interviewed on August 2 but did not receive the promotion.

  q. In September 2000, Ms. Stith applied for the position of Administrative Associate II.

  r. In October 2000, Ms. Stith applied for the position of Administrative Associate II, a grade 12 position.  She was interviewed on October 18 and 19 but did not

receive the promotion.

    s.    In November 2000, Ms. Stith applied for the position of Administrative Associate II .

30.    After several complaints were made by other African American employees regarding the unfairness of the job-posting procedure and related selection decisions, Merck adopted a new company-wide job posting policy. Nevertheless, Ms. Stith was denied any benefit from this new policy.

31.    On February 14, 2002, Ms. Stith was terminated without any notice or cause. She was informed by Marisa Guisante, Human Resources Representative (white female), and Scott Higgins, Department Manager (white male), that her position was being eliminated immediately ("effective today"). Ms. Stith objected to her immediate termination because, at the time, there were three positions in the procurement area that were open and that she was well qualified to perform. These three open positions were given to white females who had fewer years of service in the procurement area than did Ms. Stith. During her employment with Merck, Ms. Stith became aware of seven white employees (Elena Gedik, Donna Arena, Jenny Lynn Parrish, Loraine Jacik, Betty Ann Shutz, Rene DeRosario, and Arlene Reichardt) who were informed that their positions were going to be eliminated, yet they were given ample time to obtain another position with Merck. Ms. Stith believes that she was denied such an opportunity due to retaliation in violation of the Civil Rights Act of 1964, as amended (Title VII), <u>i.e.</u>, because she filed her original EEOC Charge and had actively supported the <u>Webb</u> lawsuit.

## CLASS ACTION ALLEGATIONS

32.    There are hundreds of members of the proposed class. It would be impracticable to bring so many persons before the Court as plaintiffs.

33.    There are questions of law and fact common to the members of the class, including but not limited to:

8

      a.    whether the patterns of racial discrimination and harassment alleged by the plaintiffs occurred;

      b.    whether these were sufficient to create a racially discriminatory compensation structure;

      c.    whether Merck knowingly allowed such racial discrimination to continue by failing to take prompt and effective action to stop it;

      d.    whether Merck discriminates against Black employees because of their race with respect to initial work assignments, promotions, transfers, hour wages or base salaries, bonuses, stock options, any other compensation, training, demotions, layoffs, discharge and discipline; and

      e.    whether Merck's actions and omissions occurred because of malice, an evil motive, recklessness, or a callous indifference to plaintiffs' rights.

34.    The claims of the Named Plaintiff are typical of the claims of the proposed class. The Named Plaintiff has been subjected to some form of the discrimination alleged herein. Proof of the patterns or practices of discrimination alleged here will support the claims of the Named Plaintiff as well as those of the other members of the proposed class.

35.    The Named Plaintiff will fairly and adequately represent the interests of the entire proposed class. She has no conflict of interest with the absent members of the proposed class and is represented by counsel that are competent and experienced in employment discrimination litigation.

36.    Merck's failure to take prompt and effective action to end or reduce the pervasive racial discrimination alleged herein were not based on grounds peculiar to any individual class member, but rather on grounds, including race, generally applicable to all of the members of the proposed class, thereby making appropriate final equitable relief, and monetary relief in the form of compensatory and punitive damages, with respect to the proposed class as a whole.

37. The questions of law and fact common to the compensatory damages claims of the proposed class predominate over any questions affecting only individual class members. Thus, certification of the proposed class is superior to other available methods for the fair and efficient adjudication of the controversy.

38. The proposed class may be certified under Rule 23(b)(2) and/or (b)(3), as appropriate.

39. Plaintiffs demand trial by jury of all issues so triable, and an award of front pay and back pay, prejudgment interest, attorneys' fees, costs, and expenses and whatever other equitable relief the Court deems proper.

## PLAINTIFFS' CLAIMS

### The Civil Rights Act of 1866, 42 U.S.C. § 1981

40. Plaintiffs restate and reallege paragraphs 1 - 39, inclusive, as though set forth here in full.

41. Merck has discriminated against plaintiffs and all members of the proposed class by denying them the same rights as enjoyed by White employees with respect to the terms and conditions of their employment relationship with Merck and to the enjoyment of all benefits, privileges, terms and conditions of that relationship, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended.

42. Merck's conduct has been intentional, deliberate, willful and conducted in callous disregard of the rights of plaintiffs and members of the proposed classes.

43. By reason of Merck's discrimination, plaintiffs and members of the proposed class are entitled to all legal and equitable remedies available under Section 1981, including but not limited to damages for mental anguish and punitive damages.

### Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d

44. Plaintiffs restate and reallege paragraphs 1 - 43, inclusive, as though set forth here

in full.

45. Merck has discriminated against plaintiffs and all members of the proposed class in the use of federal funds with respect to terms and conditions of employment because of their race in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq., as amended by the Civil Rights Act of 1991.

46. Merck's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of plaintiffs and members of the proposed class.

47. Merck's policies and practices have produced disparate impact against class members in the use of federal funds with respect to the terms and conditions of employment.

48. By reason of Merck's discrimination, plaintiffs and members of the proposed class are entitled to all legal and equitable remedies available under section 2000d, et seq.

### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

49. Plaintiffs restate and reallege paragraphs 1 - 48, inclusive, as though set forth here in full.

50. Merck has discriminated against plaintiffs and all members of the proposed class with respect to the terms and conditions of employment because of their race in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991.

51. Merck's conduct has been intentional, deliberate, willful and conducted in callous disregard of the rights of plaintiffs and members of the proposed class.

52. Merck's policies and practices have produced disparate impact against class members with respect to the terms and conditions of employment.

53. By reason of Merck's discrimination, plaintiffs and members of the proposed class are entitled to all legal and equitable remedies available under section 2000e.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully pray that the Court:

    a.    adjudge, decree and declare the practices of Merck complained of herein to be violative of the rights secured to plaintiffs and members of the proposed class;

    b.    issue a permanent prohibitory injunction prohibiting Merck and its officers, agents, employees, and successors from engaging in the practices complained of herein;

    c.    issue a permanent mandatory injunction requiring that Merck adopt policies and practices that ensure equal treatment of all African-American employees and applicants and that reduce the opportunity for its managers to violate the requirements of Title VII and 42 U.S.C. § 1981;

    d.    order Merck to provide appropriate job relief to plaintiffs and class members in the form of promotions for persons who should have been in higher level jobs at the time of judgment and any other job relief determined to be appropriate;

    e.    enter judgment in favor of plaintiffs and class members against Merck for all available remedies and damages under law and equity, including but not limited to back pay, front pay, and past and future mental anguish and pain and suffering in amounts to be determined at trial;

    f.    order Merck to pay punitive damages to plaintiffs and class members in amounts to be determined at trial;

    g.    order Merck to pay the attorneys' fees, costs and expenses and expert witness fees of plaintiffs and class members associated with this action;

    h.    grant such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable; and

    i.    retain jurisdiction until such time as the Court is satisfied that Merck has remedied the practices complained of herein and is determined to be in full compliance with the law.

Dated: June 27, 2002

                                                    _____
Joseph C. Kohn, Esquire
Martin J. D'Urso, Esquire
Diana Liberto, Esquire
Kohn, Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

Robert T. Vance, Jr., Esquire
Suite 700, 1616 Walnut Street
Philadelphia, PA 19103
(215) 772-0300

Adrian J. Moody, Esquire
Isaac H. Green, Jr., Esquire
Suite 700, 1616 Walnut Street
Philadelphia, PA 19103
(215) 735-2400

Attorneys for Plaintiffs